FILED
2016 Sep-30  PM 04:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **C. STANLEY BAILEY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:15-cv-210-AKK** |
| **FEDERAL INSURANCE COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiffs C. Stanley Bailey, John Figlewski, Rick D. Gardner, George J. Hall, Rick Halloran, James M. Kent, Jr., Peter L. Lowe, Shannon Maddox, D. Dewey Mitchell, Robert R. Parrish, Jr., Kenneth Pomeroy, C. Marvin Scott (collectively "the Bailey Plaintiffs"), and Intervenor Plaintiffs James A. White and William Caughran (collectively "the Intervenor Plaintiffs") (collectively "the Plaintiffs"), pursue this action against Federal Insurance Company pursuant to 28 U.S.C. § 2201 seeking a declaration of rights and obligations under a liability insurance policy. Docs. 1 at 3; 24 at 5–6; 29 at 5–6.[1] Specifically, Plaintiffs allege that Federal breached the policy when it attached an endorsement that it had not first filed with the State of Alabama and then used that endorsement to limit

---

[1] Caughran has joined in the Bailey Plaintiffs' motion, doc. 91, and White has filed his own motion for summary judgment, doc. 77, that mirrors the Bailey Plaintiffs' motion.

coverage. *Id.* Plaintiffs have moved for partial summary judgment, docs. 33; 77, 91, and Federal has also moved for summary judgment on all claims, docs. 40; 79. The motions are fully briefed and ripe for review. Docs. 35; 38; 47; 78; 80; 91; 92; 106; 107; 108. Based on a review of the evidence, the law, and with the benefit of oral argument as to the issues related to Count I, Plaintiffs' motion for summary judgment is due to be denied in part, and Federal's motion for summary judgment is due to be granted in part.

## I.     SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such

2

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II. FACTUAL ALLEGATIONS

The Plaintiffs are former officers and directors of Superior Bancorp, a holding company for Superior Bank. Docs. 34 at 6; 81-2 at 15–17. In their capacity as officers and directors, Plaintiffs regularly purchased liability insurance coverage, including Directors and Officers insurance (D&O), for Superior Bancorp and Superior Bank from Federal. *Id.* D&O policies are used to protect the directors and officers of a corporation against claims that they allegedly failed to perform their duties. Docs. 35-2 at 10; 81-1 at 25.

The dispute in this case centers on a D&O policy Plaintiffs purchased through their broker, the Mailon Kent Agency, whose owner, Mailon Kent, was also a director of Superior Bancorp. Doc. 81-3 at 16. From April 2009 until April 2010, the D&O policy had a $10 million coverage limit that contained no regulatory limitations or exclusions resulting from regulatory claims. Docs. 35-2 at 16; 81-1 at 45. However, when the policy came up for renewal in April 2010, because of the economic climate Federal informed Plaintiffs that it intended to change the terms of the policy to offer liability coverage with a regulatory exclusion endorsement and defense carveback.[2] Doc. 82-1 at 40. The defense

---

[2] Beginning in 2008, as a result of the financial crisis, many banks nationwide failed and faced increased regulatory scrutiny. As a result of this heightened regulatory scrutiny, insurance companies began inserting regulatory exclusion endorsements into their policies which would either limit or remove their coverage for claims brought by regulators. Following this industry trend, Federal began inserting regulatory exclusions into its coverage policies with financial institutions. Docs. 35-2 at 12; 35-7 at 2.

carveback meant that the D&O policy had a new sublimit of $1 million on defense coverage for a regulatory action against the bank. Doc. 35-2 at 19. Federal decreased the coverage because of its concerns about potential exposure if Superior Bank failed and the Federal Deposit Insurance Corporation instituted a civil action against the directors and officers. Doc. 35-9 at 2–3. Although Plaintiffs had the option to reject the new terms—i.e., Plaintiffs could have paid an additional amount to extend the old coverage for acts committed during the coverage period or obtain coverage with another carrier; Plaintiffs decided to renew with Federal under the new limitations of a regulatory exclusion endorsement. Docs. 35-8 at 2; 81-1 at 71–72.

As part of its operating practice and procedure, Federal has various standard endorsements or policies its underwriters may retrieve and insert into a policy. Doc. 35-2 at 12. In contrast, a manuscript endorsement is one that is created for a specific policy with the attendant language changes that may be necessary. Doc. 35-2 at 13. Basically, when an underwriter wishes to use language that is not standard, the underwriter sends the desired language to Federal's legal counsel for that department to create an endorsement, i.e., "manuscripted." Doc. 35-2 at 12–13. Federal utilized this practice for the new policy it issued to Plaintiffs because although Federal already had defense carvebacks in place for some financial institutions, it did not have a standard endorsement available with the exclusion

that was widely used for banks. Docs. 35-2 at 20, 40; 86-4 at 12. As a result, Federal manuscripted an endorsement for the policy it issued Plaintiffs in April 2010.

Federal finally transmitted the final binders containing the policy to Plaintiffs in July 2010. Doc. 81-8 at 124. By then, Federal had created a standard version of the regulatory exclusion endorsement and placed this standard version in the policy. Doc. 35-12 at 2. However, apparently because it viewed the endorsement as "unique" and not subject to the filing requirement imposed by Ala. Code § 27-14-8, doc. 35-10 at 8, Federal waited until September 6, 2010 to file the endorsement with the Alabama Department of Insurance, docs. 35-4 at 4; 35-17 at 2–3.

Superior Bank failed a year after Federal issued the new policy and six months after Federal filed the endorsement. The FDIC takeover and its litigation against Plaintiffs triggered Plaintiffs to request coverage from Federal for defense costs. Doc. 39-1 at 28. By a letter dated May 11, 2011, Federal informed Plaintiffs it intended to cap the coverage for defense costs at $1 million because of the regulatory exclusion cap. Doc. 35-3 at 2–7. Although Plaintiffs never raised any objections to the policy or its endorsement, *see, e.g.,* doc. 81-1 at 96; 81-7 at 63–64, Plaintiffs now seek to void the policy due to alleged deficiencies. Specifically, Plaintiffs maintain that the failure to file prior to issuing the policy that forms

6

Plaintiffs contentions in this case that the defense carveback contained in the endorsement is null and void as a result and that Federal is obligated to provide coverage without the $1 million sublimit.

### III. ANALYSIS

Plaintiffs seek to void the Endorsement and ultimately get coverage beyond the $1 million limit. In particular, in Counts I and II, Plaintiffs move for a Declaratory Judgment pursuant to 28 U.S.C. § 2201, declaring the Regulatory Exclusion Endorsement null and void due to Federal's failure to (1) file the endorsement in compliance with Ala. Code §27-14-8, and (2) disclose the terms of the endorsement before materially altering the policy. Doc. 1 at 17. And, in Counts III and IV, Plaintiffs seek reformation of the insurance contract and state a claim for breach of contract, respectively.[3] As a general matter, where, as here, the interpretation of a state statute is at issue, a federal court sitting in diversity must apply state substantive law. *Allison v. Vintage Sports Plaques,* 136 F.3d 1443, 1445 (11th Cir. 1998) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938)). Put differently, the court must "decide the case the way it appears the state's highest court would." *Ernie Haire Ford, Inc., v. Ford Motor Co.,* 260 F.3d 1285, 1290 (11th Cir. 2001). Relevant here, Alabama law provides that "insurance contracts,

---

[3] Intervenor Plaintiffs allege the same causes of action as the Bailey Plaintiffs, *see* docs. 24 at 17–22; 30 at 17–23, and have filed substantively similar motions for summary judgment, *see* docs. 77, 101. Accordingly for the purposes of this Opinion, when discussing Plaintiffs' claims, the court will reference the Bailey Plaintiffs' Complaint and Motions for Summary Judgment.

like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Celtic Life Ins. Co. v. McLendon,* 814 So. 2d 222, 224 (Ala. 2001). "[I]nsurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that different parties contend for different constructions does not mean that the disputed language is ambiguous." *Woodall v. Alfa Mt. Ins. Co.,* 658 So. 2d 369, 371 (Ala. 1995). Insurance companies also have the right to limit their liability and to write new policies with narrow coverage. *Altiere v. Blue Cross & Blue Shield of Ala.,* 551 So. 2d 290, 292 (Ala. 1989); *United States Fid. & Guar. Co. v. Bonitz Insulation Co.,* 424 So. 2d 569 (Ala. 1982). In that regard, if the language comports with Alabama law, courts do not have the power to rewrite the language to provide coverage that was not intended by the parties. *Am. Nat'l Prop. & Cas. Ins. Co. v. Blocker,* 165 F. Supp. 2d 1288, 1295 (S.D. Ala. 2001). However, ambiguities in a policy are "construed liberally in favor of the insured," *Scottsdale Ins. Co. v. Town of Orange Beach,* 618 So. 2d 1323, 1325 (Ala. 1993), and coverage exceptions are construed narrowly to allow for maximum coverage for the insured, *Alliance Ins. Co. v. Reynolds,* 494 So. 2d 609, 612 (Ala. 1986).

With these general principles in mind, the court turns its attention to the policy provision at issue and the parties' respective contentions. The court will begin first with Plaintiffs' contentions that they are entitled to a declaratory judgment due to Federal's purported failure to disclose a material alteration to the policy (Count II) or, alternatively, that they are entitled to a reformation of policy (Count III). Finally, the court will address Plaintiffs' contentions that the endorsement is null and void due to the filing deficiency (Count I) and the related breach of contract claim (Count IV).

**A. Declaratory Judgment For Failure to Disclose (Count II)**

In Count II, Plaintiffs contend that they are entitled to a declaratory judgment based on the alleged failure of Federal to disclose a material alteration to their policy. Doc. 1 at 18–19. Plaintiffs do not allege that they reasonably relied upon Federal's representations about the substance of the challenged endorsement or that Federal fraudulently induced them to sign the Policy. Instead, they claim that because Federal appended the draft endorsement to the policy binder in April 2010 and failed to file the endorsement with the Alabama Department of Insurance, Federal cannot rely on the endorsement to limit its coverage. Doc. 1 at 18–19. After a careful review of the law and the evidence, the court finds that Federal is due summary judgment on this claim.

A fraud claim based on suppression requires: (1) a false representation concerning an existing material fact; (2) made with knowledge of the falsity or with reckless regard for truth or falsity; (3) reasonable reliance on the representation by the plaintiff who was, in fact, deceived by it; (4) that the plaintiff's reliance was justified under the circumstances; and (5) damages. *First Alabama Bank of Montgomery, N.A. v. First State Ins. Co., Inc.,* 899 F.2d 1045, 1056 (11th Cir. 1990). However, reliance is not reasonable and "the trial court can enter a judgment as a matter of law . . . where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Foremost Ins. Co. v. Parham,* 693 So. 2d 409, 421 (Ala. 1997). Under this standard, "[a] defendant does not suppress the truth, even if he previously made an oral misrepresentation, if he presents for the plaintiff's review and signature a document that clearly discloses the truth." *Roper v. Assoc. Fin. Serv. of Alabama, Inc.,* 533 So. 2d 206, 209 (Ala. 1988).

Turning to the facts in this case, the evidence establishes that Federal placed Plaintiffs on notice that their renewed policy would include a Regulatory Exclusion Endorsement. First, Mailon Kent, one of the Bailey plaintiffs and the owner of the agency responsible for procuring the liability insurance, played a direct role in the

10

procurement process. Doc. 81-4 at 36. Although Kent contends that he never read the emails alerting him to the change in coverage and that he assigned that task instead to a subordinate, doc. 81-4 at 69–70 ("I don't think I read this. . . . I depended on Pam [Bowden] to handle that."), the employee in question testified that she discussed the policy with Plaintiffs. According to the employee, "it was not a surprise to [Plaintiffs] about either endorsement . . . because it had been discussed previously with them," and that although she would not have used the word "carveback," she discussed that the policy had a "million dollar sub-limit." Doc. 81-8 at 67, 105–6. Significantly, Plaintiffs corroborated her testimony. For example, Bailey testified that he had no reason to believe that the employee did not discuss the regulatory exclusion with defense carveback with him, doc. 81-1 at 33–36, and the other Plaintiffs also acknowledge that they had discussions with Federal regarding the contraction of the scope of coverage, docs. 81-3 at 32–33; 81-4 at 91–93, 99–101; 81-5 at 18; 81-7 at 51, 53. Moreover, although Plaintiffs claim they never read the policy and did not understand the term "defense carveback," they acknowledge that they knew the policy had a $1,000,000 limitation on defense costs. Docs. 39-1 at 18, 20, 24; 81-7 at 50, 56, 76; 81-1 at 79. In fact, the documents produced and conversations Plaintiffs detailed in their depositions demonstrate that Plaintiffs had notice that the scope of their coverage had materially changed, and that Plaintiffs accepted the new terms in part because

11

they had limited options with respect to increasing their coverage due to the state of the banking environment. *See, e.g.,* docs. 81-4 at 46 ("we would have loved to—we would have loved to have had, you know, more D&O coverage, but I think the industry could see what was happening to the banks, so everyone started dropping it."); 39-1 at 10 ("I knew it [the practice of regulatory exclusions] was going on in the industry. It had been discussed at the initial fact-finding lunch, that that was one of the trends that the insurance companies were seeing with all the turmoil that was going on in the industry."). Finally, the court notes also that, after Federal issued the policies and Plaintiffs forwarded them to the legal department, no one at Superior alleged that the D&O policy contained a mistake in its provision of coverage or that the policy documents failed to include material terms that Plaintiffs had agreed to in accepting the coverage. Docs. 39-1 at 26; 81-4 at 102, 115, 117; 81-7 at 63; 81-8 at 127–129.

Ultimately, even when taken in the light most favorable to Plaintiffs, the facts alleged do not support a finding that Federal failed to disclose material changes to the policy or that Plaintiffs reasonably relied upon Federal's representations to their detriment.[4] As directors of a bank involved in complex financial transactions,

---

[4] Plaintiffs rely on the holding in *Alliance Ins. Co., Inc. v. Reynolds*, 494 So. 2d 609 (Ala. 1986), to support their contention that a failure to disclose is grounds for reformation of contract. In *Reynolds*, the defendants had assault and battery liability insurance under a policy with a separate carrier until the plaintiff insurance company picked up the policy. *Id.* The plaintiff failed to notify the defendants that they were changing the scope of the policy coverage, and, in fact, the defendants' agent returned the renewal notice to the defendants indicating that it was renewed "as is." *Id.* at 612. Relying on the particular facts

Plaintiffs were all sophisticated actors knowledgably versed in reading and bargaining for contracts. *See, e.g.,* docs. 81-4 at 17, 24–26; 81-7 at 51–52. That they now disagree about the scope of coverage provided is simply not a sufficient basis for a finding that Federal misrepresented the contents of the policy. Accordingly, Defendants are entitled to summary judgment on Count II.

### B. Reformation of Contract (Count III)

In Count III, Plaintiffs seek reformation of the policy to omit the regulatory exclusion endorsement based on their contention that "Federal incorrectly represented that the regulatory exclusion in the renewed Policy would be the Regulatory Sub-Limit Endorsement" and "did not disclose the Regulatory Exclusion Endorsement . . . before the renewed Policy dated July 19, 2010 was delivered." Doc. 1 at 21. Reformation is used to "make [the contract] conform to the intention of the parties where, through mutual mistake, their intention is not so expressed . . . ." *Original Church of God, Inc. v. Perkins*, 293 So. 2d 292, 293 (Ala. 1974). In the insurance contract context, reformation is an appropriate remedy where a carrier failed to give notice to an insured of the enlargement or material change to a policy prior to renewal. *See generally Reynolds,* 494 So. 2d

---

in that case, the court held that the defendants had justifiably relied upon the plaintiff's representations regarding the scope of their coverage and ordered the plaintiff to pay the amount due under the scope of the prior coverage. *Id.* In contrast, here, Federal informed Plaintiffs that the scope of their coverage was changing in a material way and then outlined those changes in conversation and via email. As such, no credible basis exists to argue that Federal failed to disclose a material change to the insurance contract.

609. To invoke the remedy the moving party must demonstrate "by evidence that is clear, exact, convincing and satisfactory that [the contract] does not express the true agreement of the parties." *Perkins*, 293 So. 2d at 293. Plaintiffs have failed to make the necessary showing and, as such, are not entitled to reformation.

Contrary to Plaintiffs' contentions, the record establishes that Federal placed them on notice that their renewed policy would have decreased D&O coverage and a regulatory exclusion. *See, e.g.,* doc. 81-5 at 36–37 (Plaintiff Caughran stating: "I understood that there would be no money available for regulators, yes."). To get around this disclosed fact, Plaintiffs contend that they are challenging instead Federal's decision to use a final endorsement that differed from the one Federal presented in the initial email transmitting the policy. Doc. 98 at 29–30. While Plaintiffs are technically correct, their contention is unavailing for several reasons. First, Plaintiffs overlook that Federal labeled the endorsement as "Draft" and that it contained no terms, effective dates, or policy amounts. Doc. 35-11 at 13. Instead, the initial email outlined a discussion Federal had with the Mailon Kent Agency and included several attached draft endorsements. *Id*. Second, the Mailon Kent employee responsible for procuring the policy for Plaintiffs testified that she knew that the endorsement in the April 2010 email was not the final version that Federal

would include in the policy.[5] Doc. 81-8 at 100. Her testimony is consistent with the substance of the initial email, which states: "For the D&O we will provide $5M Limit with a $1M Ret for $275,000. This will include a regulatory exclusion with a defense carveback for $1,000,000." *Id.* at 2. Third, this language from the April email mirrors the final language of the endorsement which Federal delivered in July 2010: "this exclusion shall not apply to **Defense Costs** which amount shall not exceed $1,000,000 . . . ." Doc. 81-15 at 64 (emphasis original). Put simply, the evidence belies Plaintiffs' contention that Federal used an endorsement that materially differed from the email Plaintiffs received outlining the new Policy terms.

Construing all evidence in favor of Plaintiffs, no valid basis exists for Plaintiffs to contend that Federal made a mistake or engaged in fraud that would warrant reformation. To the contrary, the record establishes that Plaintiffs received the coverage that they bargained for with Federal. While it is evident from this lawsuit that Plaintiffs now disagree with the limited coverage provided, "[r]eformation is

---

[5] These facts run counter to the supplemental authority Plaintiffs cite to the court. Doc. 109-1. In that case, the insurance company was attempting to enforce a clause that it added after it issued the policy. *See generally FDIC v. Bryan et al.,* 2016 WL 1075997 (N.D. Ga. March 18, 2016). As a result, the court held that the omitted clause was unenforceable because the regulatory exclusion clause was not a part of the policy. *Id.* In fact, the only reference to the regulatory exclusion clause appeared in the insurance binder, which was modifiable and automatically terminated once the policy was issued. *Id.* at 10. Therefore, Plaintiffs' reliance on *Bryan* is misplaced. In contrast, here, the policy in Superior's records explicitly contained the regulatory exclusion clause, doc. 81-15, Plaintiffs' insurance agent also knew that the policy would contain a regulatory exclusion clause in the binder, doc. 35-11, and the parties executed the agreement prior to the FDIC takeover of Superior.

not available to make a new agreement." *Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.,* 361 So. 2d 1060, 1064 (Ala. 1978). Accordingly, Federal is entitled to summary judgment on Count III.

## C. Declaratory Judgment For Failure to File Endorsement (Count I)

In Count I, Plaintiffs seek declaratory judgment that the Regulatory Exclusion Endorsement (the "Endorsement") is void due to Federal's purported failure to comply with § 27-14-8's filing requirement. At issue is Federal's failure to file the endorsement with the Alabama Department of Insurance before the policy's issuance. As Plaintiffs note, the Alabama legislature has created a department of insurance that is responsible for receiving and granting approval of insurance rates, rating systems, as well as endorsements and riders. *See* Ala. Code §§ 27-2-1, *et seq.* Relevant here, Alabama law provides in part that:

> No basic insurance policy or annuity contract form or application form where written application is required and is to be made a part of the policy, or contract, or printed rider, or endorsement form or form of renewal certificated shall be delivered or issued for delivery in this state unless the form has been filed with, and approved by, the commissioner. This subsection shall not apply to . . . policies, riders, endorsements or forms of unique character designed for, and used with, relation to insurance upon a particular subject . . .

Ala. Code § 27-14-8(a). Subsection (b) states in turn that "every such filing shall be made not less than 30 days in advance of any such delivery." Ala. Code § 27-

14-8(b). While property and casualty forms are exempted from the thirty day filing requirement, insurance companies are still required to file their forms with the Alabama Insurance Department prior to their issuance. *See* Ala. Admin. Code § 482-1-123-.04(1).

In this case, Federal filed the endorsement approximately five months after it presented the initial binder to Plaintiffs and two months after it issued the policy, and, as such, failed to comply with § 27-14-8. Based on this failure to comply, Plaintiffs direct the court to several Alabama cases which they say support their position that the endorsement is null and void as a result. The key case is *Aetna Ins. Co. v. Word*, 611 So. 2d 266, upon which both parties rely in their briefs. In that case, Aetna sought to enforce an endorsement it filed with the state over a month after the effective date of a policy it issued. 611 So. 2d at 267. The Alabama Supreme Court disagreed, noting that in addition to the delay in filing, the endorsement Aetna attached to the policy also differed from the endorsement Aetna relied on in court. *Id.* The parties disagree about the significance, if any, of the fact that the insurer in *Word* never filed the actual endorsement with the state. Presumably because the endorsement Federal filed after it issued the endorsement is the same as the one it is relying on in this case, Federal contends that *Word* supports its contention that its late filing is valid. *See* doc. 102 at 14–15. Plaintiffs disagree with this contention and direct the court to *Attorney's Ins. Mut. of*

17

*Alabama, Inc. v. Alabama Dept. of Ins.*, 62 So. 3d 1 (Ala. Civ. App. 2010), in which the Alabama Court of Civil Appeals affirmed the Commissioner's finding that the insurer's compliance with the filing requirement after-the-fact did not excuse the failure to initially comply: "We agree . . . with the trial court's decision to affirm the determination of the commissioner, in which the commissioner stated that '[a]lthough AIM has complied after the fact in regards to allowing insured to pay premiums in installments, during the period cover[ed in the examination report,] AIM was in violation of § 27-12-14.'" 62 So. 3d at 21–22.

Based on *Attorney's Mutual*, it seems that Plaintiffs are correct that a proper reading of *Word*'s holding suggests that Federal's two-month delay in filing, in the face of a statute that mandates filing prior to issuance, necessarily means that Federal's filing after-the-fact is not in compliance with the statute. *See* Ala. Code. § 27-14-8(b); Ala. Admin. Code § 482-1-123-.04(a).[6] The court notes that Alabama courts have held that insurance companies have the same rights as individuals to limit their liability or impose conditions on coverage. Consequently, it seems perhaps contrary to this general recognition that Plaintiffs can avoid the terms they bargained for, and, as Federal argues, get a windfall, by relying on a

---

[6] Plaintiffs also direct the court to *African Methodist Episcopal Church, Inc. v. Smith*, 2016 WL 4417268 (Ala. August 19, 2016), a case the Alabama Supreme Court issued last month. In that case, the plaintiffs relied on *Word* to allege that an arbitration endorsement was invalid because it had not been approved by the Alabama Department of Insurance prior to its attachment to the policy at issue. 2016 WL 4417268 at *3. Elaborating on the *Word* and *Waikar* holdings, the court explained that the filing requirement refers to the form itself, and not a specific company's use of the form. Accordingly, the court found that the insurer had complied with the filing requirement because its predecessor company had, in fact, filed the relevant form with the Department of Insurance prior to issuing the policy.

technical requirement that has no bearing on the specific contractual terms the parties actually negotiated. However, an insurer's rights are limited by the provisions in the insurance code, *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Goodman,* 279 Ala. 538, 540 (Ala. 1966), and courts determine the validity of insurance contract provisions, including those which exclude or limit coverage, by comparing them with the insurance code, *Ex parte O'Hare*, 432 So. 2d 1300, 1302–1303 (Ala. 1983); *Higgins v. Nationwide Mut. Ins. Co.*, 291 Ala. 462, 467 (Ala. 1973). Relevant here, based on the cases the parties have cited, it is clear that Alabama courts have strictly interpreted the filing requirement of § 27-14-8. *See, e.g., Aetna Ins. Co. v. Word*, 611 So. 2d 266 (Ala. 1992); *Waikar v. Royal Ins. Co. of America, Inc.* 765 So. 2d 11 (Ala. Civ. App. 1999). Therefore, Federal can only avoid liability if it can establish that it is exempt from the filing requirement or has some other valid defense.

To get around its failure to file in advance of issuing the policy, Federal raises several arguments. First, Federal alleges the commercial casualty policy it issued is exempted from the thirty-day filing requirement contained in Ala. Code § 27-14-8(b) by Ala. Admin. Code § 482-1-123-.04(a). Indeed, the exemption allows insurers to operate under the "File and Use System." Ala. Admin. Code § 482-1-123.04. Under this system, an insurance company must file its form "with the regulator on or before the date of use [by the company]." Ala. Admin. Code § 482-

1-123.03(3). Also, this section of the Administrative Code anticipates that any modifications a regulator requests will be made on a prospective basis, *id.*, which Federal argues means that this system implicitly rejects Plaintiffs' contention that they are entitled to void the endorsement. However, even under a "File and Use" system, there is no language in the regulations that exempts an insurer from the initial obligation to file its forms with the Department of Insurance prior to using them in this state. As a result, because it is undisputed that Federal filed the endorsement well after it issued the policy, Federal cannot rely on the exemption in Ala. Admin. Code § 482-1-123-.04(a) to cure its failure to file its form prior to issuance.

Second, in reliance on *Am. Auto. Ins. Co. v. McDonald,* 812 So. 2d 309, 311–12 (Ala. 2001), Federal asserts that Plaintiffs do not have standing to bring a claim for a violation of the Insurance Code. The reliance on *McDonald* is misplaced because the court focused on the fact that the plaintiff had no relationship with the insurer at the time the plaintiff sought to file a claim against the company for selling policies without a license. 812 So. 2d at 312. In contrast, here, Plaintiffs are the insureds. In addition, based on the holdings in *Aetna Ins. Co. v. Word*, 611 So. 2d 266 (Ala. 1992), *Waikar v. Royal ins. Co. of Am., Inc.*, 765 So. 2d 11 (Ala. Civ. App. 1999), and *African Methodist Episcopal Church, Inc. v. Smith*, 2016 WL 4417268 (Ala. 2016), the Alabama appellate courts have recognized that a party to

an insurance contract has an action where an endorsement that is not in compliance with Alabama law restricts coverage and the endorsement's invalidity may change the scope of insurance coverage.

Third, Federal contends that the endorsement qualified as "unique" within the meaning of § 27-14-8(a), and, as such, it was exempt from the filing requirement. Doc. 40 at 12–16. This argument centers on the fact that Federal had not used Form 14-02-16863, the official designation of the endorsement, in Alabama at the time it created it for Plaintiffs. *Id.* Plaintiffs counter that the endorsement is not unique and have moved for summary judgment on this claim.

In interpreting a statute, "the starting point . . . is the language of the statute itself." *Bankston v. Then,* 615 F.3d 1364, 1367 (11th Cir. 2010) (internal quotations omitted). In this case, the statute excludes from the filing requirements "policies, riders, endorsements or forms of <u>unique</u> <u>character</u> designed for, and used with, relation to insurance upon a particular subject." Ala. Code § 27-14-8(a) (emphasis added). Federal contends that its endorsement is "unique" because when Federal issued Form 14-02-16863 to Plaintiffs, Federal was only using a similar endorsement, Form 02-16722, with one other Alabama bank. *See* doc. 86-9 (Tabs KK and LL). Because the statute does not define the term "unique character," the court must "look to the common usage of [the] words for their meaning." *Consolidated Bank, N.A. v. United States Dep't of Treasury,* 118 F.3d 1461, 1464

(11th Cir. 1997). The parties do not cite, and the court has not found, any cases in Alabama that address "unique character" in the insurance context. The parties seem to agree that a resolution of this issue will depend, in part, on whether Federal had used the endorsement previously or if Federal only made this endorsement available to Plaintiffs. The parties disagree, however, about the specifics of the use of the endorsement here, with Plaintiffs claiming that Federal used it in a broader manner than Federal contends. Because of the conflicting evidence on this issue, the lack of case law on point, and the fact that a resolution of this issue will have a dispositive effect, the court finds that material issues of fact preclude summary judgment on this claim.[7]

---

[7] Federal also relies on the "savings clause" of Ala. Code § 27-14-16 to argue that the policy it issued is valid even though it failed to comply with § 27-14-8. The "savings clause" states: "[a]ny insurance policy, rider or endorsement hereafter issued and otherwise valid which contains any condition or provision not in compliance with the requirements of this title shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this title." Ala. Code § 27-14-16. The endorsement here satisfies the first part of this clause in that it is "otherwise valid" in light of its approval by the Department of Insurance. The court does not believe it satisfies the rest of the clause however, i.e., "which contains any condition or provision [of a policy that is] not in compliance with [Alabama law]." Ala. Code § 27-14-16 (emphasis added). As the court sees it, the issue here is not whether the endorsement contains language that complies with Alabama law. Again, the record here shows that the Department of Insurance deemed the endorsement "filed" in September 2010 and no one has raised any allegation that there is a condition or provision in the endorsement that does not comply with Alabama law. Accordingly, because the failure to file a form prior to its use in a policy is an issue separate and distinct from a "condition or provision" in the policy itself, the court finds that § 27-14-16 is inapplicable to the current facts. However, because Federal indicated at oral argument that this issue is a fallback in the event its main arguments fail, Federal is free to ask for reconsideration on this issue in the event it loses on the "unique character" issue.

**D. Breach of Contract (Count IV)**

A plaintiff establishes a breach of contract claim by showing: (1) the existence of a valid contract binding the parties; (2) his performance under the contract; (3) the defendant's nonperformance; and (4) damages. *Southern Medical Health Sys., Inc. v. Vaughn,* 669 So. 2d 98, 99 (Ala. 1995). The existence of a contract is obviously not in dispute, nor is it disputed that Plaintiffs performed under the policy by paying their premiums. Because resolution of this claim hinges on whether the regulatory exclusion endorsement is void and therefore not a part of the policy, *see* supra III.C, the motion for summary judgment on this claim is also due to be denied at this juncture.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' motion for summary judgment is due to be denied as to Counts I (Declaratory Judgment for Failure to File) and IV (Breach of Contract), and Federal's motions for summary judgment are due to be granted as to Counts II (Declaratory Judgment for Failure to Disclose) and III (Reformation), and due to be denied in all other respects.

**DONE** the 30th day of September, 2016.

ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE